UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LELAND JOHNSON,

    Petitioner,

v.                                                         Case No. 8:16-cv-553-T-36SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

Leland Johnson, a Florida inmate, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1) challenging his Hillsborough County convictions. Respondent filed a response (Dkt. 6), and Johnson filed a reply (Dkt. 11). After review, Johnson's petition will be DENIED.

**Procedural History**

Johnson was convicted after a jury trial of one count of first degree murder, three counts of attempted first degree murder, and one count of shooting at, within, or into a vehicle. (Dkt. 8, Ex. 6). He was sentenced to life imprisonment. (Dkt. 8, Ex. 7). The state appellate court *per curiam* affirmed Johnson's convictions and sentences. (Dkt. 8, Ex. 10). The state court denied Johnson's motion and amended motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.850. (Dkt. 8, Exs. 11, 12, 13, 19). The state appellate court *per curiam* affirmed the denial of relief. (Dkt. 8, Ex. 22).

**Standard Of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Claims of ineffective assistance of counsel are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. To show deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court must consider whether, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness

of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*.

Johnson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

**Discussion**

Ground One

Johnson alleges that counsel was ineffective in failing to move to strike juror Denise Lang for cause. Johnson contends that Lang "had a preconceived opinion towards law enforcement officers and favored their testimony," partly because of a bias against people who had been in jail. (Dkt. 1, p. 7). During voir dire, the prosecutor questioned Lang:

[PROSECUTOR]: [ ] Ms. Lang, good morning, ma'am.

MS. LANG: Yes.

[PROSECUTOR]: I see you have had some prior jury duty experience . . .

MS. LANG: Yes, about two years ago.

[PROSECUTOR]: Was that here in Hillsborough County?

MS. LANG: Yes.

[PROSECUTOR]: And were you the foreperson?

MS. LANG: No.

[PROSECUTOR]: And were you able to reach a verdict in that case?

MS. LANG: Yes.

[PROSECUTOR]: Anything about that experience making you feel uncomfortable about sitting on a case like this?

MS. LANG: No.

[PROSECUTOR]: And what kind of charge was that?

MS. LANG: It was either a DUI or DWI.

[PROSECUTOR]: [ ] You indicated that you have some law enforcement friends or ties?

MS. LANG: Yes, my brother.

[PROSECUTOR]: Who does he work for?

MS. LANG: Well, he worked for the Pinellas County Sheriff's Department but not any longer.

[PROSECUTOR]: How long has he been out of law enforcement work?

MS. LANG: About five years.

[PROSECUTOR]: Did he ever work on any homicides and tell you about them?

MS. LANG: No, he was a corrections officer.

[PROSECUTOR]: Anything about your brother - - your relationship with your brother, the fact he was a corrections officer or deputy makes you feel you could not be fair and impartial in this case?

MS. LANG: No.

[PROSECUTOR]: One of the issues that always comes up is going to be you are going to hear from a lot of law enforcement in this case. Credibility of a witness is always going to be something a juror should consider when deciding whether to believe their testimony or not believe their testimony. Would you give a deputy or any law enforcement testimony more credibility simply because they are a deputy?

MS. LANG: Maybe.

[PROSECUTOR]: Maybe? Okay. And why do you feel that way?

MS. LANG: Well, I mean, my brother's told me things and told me about different people that have maybe been in the jail, and you just hear things. And I have a lot of other friends that are his friends that are also corrections officers, and so I don't know, I guess I would tend to believe what he is telling me is the truth.

[PROSECUTOR]: All right. Because the whole point is that I would - - what we would like you to do is judge the credibility of the witnesses on the way they answer the questions and how they conduct themselves in court, not simply because they are law enforcement or wear a uniform. Do you think you can do that in this case?

MS. LANG: I think so.

[PROSECUTOR]: You think so or know so?

MS. LANG: I think so.

[PROSECUTOR]: We need you to pass judgment on the credibility after you heard them, not before. Wait.

MS. LANG: I'm sure they could. In the other trial, they had officers, and I really listened to everything. So yeah, I believe I could.

[PROSECUTOR]: Thank you, ma'am. . .

(Dkt. 8, Ex. 5, pp. 52-55).

The state court conducted an evidentiary hearing on Johnson's claim. Johnson testified that his attorneys handled jury selection, and that he had no "say-so" in the process. (Dkt. 8, Ex. 18, pp. 290-91). Johnson stated that he did not discuss Lang with his attorneys, and that he did not know

at the time that Lang could be excluded for expressing a preference for law enforcement officers' testimony. (*Id.*, pp. 291-92). However, Johnson agreed that his attorneys explained the process of striking prospective jurors; that he paid attention during voir dire and heard his attorneys' conversations about which prospective jurors they liked and disliked; that his attorneys asked him if he had any input into which prospective jurors to keep and strike; and that his attorneys asked him if he agreed with the jury that was chosen. (*Id.*, pp. 291, 293-94). Johnson also conceded that some of the prospective jurors who could have been selected after Lang would have been worse for the defense than Lang, and that he could only speculate that Lang was in fact biased. (*Id.*, p. 295).

Assistant Public Defenders Marcia Perlin and J. Kenneth Littman represented Johnson at trial. Perlin took notes during voir dire and handled challenges during the jury selection process. (*Id.*, p. 299). Littman questioned prospective jurors during voir dire. (*Id.*, p. 310). Perlin and Littman testified that they explained the jury selection process to Johnson. (*Id.*, pp. 307, 310). Littman testified that this explanation addressed peremptory strikes and strikes for cause. (*Id.*, p. 310). Both attorneys also testified that they would have informed Johnson to tell them if there was any prospective juror whom Johnson did not like. (*Id.*, p. 300, 307, 310, 313). Littman testified that he told Johnson the defense would try to strike a prospective juror Johnson did not like. (*Id.*, p. 313).

Littman also testified that Johnson was active in the selection process, and that Littman had "no reason to believe" Johnson was not fully aware and participating. (*Id.*, pp. 310-11). Littman testified that decisions about jurors were made by the attorneys, with Johnson's approval. (*Id.*, p. 313). Perlin testified that she would have made a note if Johnson had expressed an opinion on a prospective juror, but that she had no such notes about Lang. (*Id.*, p. 304).

Perlin testified that her voir dire notes indicated "there may be issues with a cause" for Lang. (*Id.*, p. 300). However, she testified, she believed that Lang was rehabilitated during further questioning about her ability to listen to law enforcement. (*Id.*, pp. 300-01). Accordingly, Perlin testified, she did not believe that a basis existed to successfully challenge Lang for cause. (*Id.*, p. 301). Perlin further testified that she did not want to use a peremptory strike on Lang because Lang was better for the defense than some of the other prospective jurors who might have been chosen later. (*Id.*, p. 302). In other words, she testified, "I didn't believe there was enough to challenge [Lang] for cause, so I didn't because of the rehab[ilitation]. And she was not disliked more than other jurors were disliked, as a reason to use one of our peremptory challenges." (*Id.*, p. 305). Accordingly, she testified, the defense did not strike Lang "as a trial strategy." (*Id.*, p. 301).

Similarly, Littman testified that he recalled that Lang was rehabilitated, that Johnson "was then ok with that juror," and that, based on his review of Perlin's seating chart, the defense did not want some of the upcoming prospective jurors to be seated. (*Id.*, pp. 312). Accordingly, he testified, Johnson agreed to seat Lang instead of later jurors who would be less favorable. (*Id.*, pp. 312-13).

In its order, the state court addressed Lang's voir dire answers and the evidentiary hearing testimony before finding:

> [T]he Court finds that Ms. Lang did not exhibit a bias in favor of law enforcement officers. She initially indicated that her relationship with her brother, a former sheriff's officer, would not affect her ability to be fair and impartial. But when questioned if she could judge credibility of witnesses based on their actions in court and "not simply because they are themselves law enforcement or wear a uniform," she responded "I think so." However, even if this comment were to be read as a bias in favor of law enforcement as Defendant suggests, Ms. Lang went on to say that she was sure she could wait to determine credibility until after hearing the witnesses and explained, "In the other trial, they had officers, and I really listened to everything. So yeah, I believe I could." The Court agrees with M[s]. Perlin's testimony that to the extent Ms. Lang expresse[d] a bias, she was rehabilitated. The Court finds these facts distinguishable from the case law cited by defense counsel at the end of the

> evidentiary hearing in that Ms. Lang's answers during voir dire did not indicate a predetermined partiality towards the testimony of law enforcement officers. *Cf. Henry v. State*, 756 So. 2d 170 (Fla. 4th DCA 2000) (finding reasonable doubt as to juror's impartiality where jurors stated officers "don't lie"); *Freeman v. State*, 50 So. 3d 1163 (Fla. 2d DCA 2010) (finding juror's responses indicated a basis for reasonable doubt as to her impartiality where juror stated she may give officers "a little more credibility").
>
> Additionally, based on their demeanors at the evidentiary hearing the Court finds credible the testimonies of Ms. Perlin and Mr. Littman. Based on their testimonies, the Court finds that they discussed jury selection with Defendant and that Defendant did not express any concern as to including Ms. Lang in the jury. Furthermore, based on Mr. Littman's and Ms. Perlin's testimonies, the Court finds it was reasonable trial strategy not to use a peremptory challenge on Ms. Lang because of the possibility of less favorable potential jurors in the pool behind Ms. Lang. For all of these reasons, the Court finds Defendant has not established deficient performance or prejudice. Accordingly, Defendant is not entitled to relief on claim one.

(Dkt. 8, Ex. 19, pp. 3-4) (court's record citations omitted).

"The constitutional standard of fairness requires that the criminally accused have a panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 794, 799 (1975). "The purpose of a voir dire is to ascertain whether a potential juror can render a verdict solely on the basis of the evidence presented and the charge of the trial court." *Wilcox v. Ford*, 813 F.2d 1140, 1150 (11th Cir. 1987). A criminal defendant is entitled to effective assistance of counsel during voir dire. *Brown v. Jones*, 255 F.3d 1273, 1279-80 (11th Cir. 2001). Counsel's questions and tactics during voir dire are a matter of trial strategy. *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001).

Johnson has not demonstrated that his attorneys performed deficiently. The state court's determinations that attorneys Perlin and Littman were credible and that they made a strategic choice to select Lang are factual findings that are presumed correct. Johnson has not rebutted this presumption by clear and convincing evidence. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed

to be correct unless [the petitioner] rebuts the presumption by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)(1)); *DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact.").

In assessing counsel's strategic decision, a court focuses on whether the choice was reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). *See also Bell v. United States*, 351 Fed. App'x 357, 360 (11th Cir. 2009). ("Assessing jurors during *voir dire* . . . requires an evaluation of demeanor and credibility. Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility.").

The testimony the state court found credible indicates that Johnson did not express any dissatisfaction with Lang's selection to his jury, despite being involved in the proceedings and being informed by his attorneys to tell them if he did not like a juror. Moreover, this testimony demonstrates that Johnson's attorneys considered whether to strike Lang, but decided that Lang had been rehabilitated and made a strategic choice that Lang's inclusion on the jury was preferable to the inclusion of other prospective jurors. In light of these circumstances and the strong presumption that counsels' conduct was reasonable, Johnson fails to show that his attorneys made an unreasonable strategic decision that no competent attorney would have chosen.

There is also support for the state court's conclusion that Johnson failed to show prejudice resulting from counsel's performance. To establish prejudice, Johnson must show that Lang was actually biased. *See Rogers v. McMullen*, 673 F.2d 1185, 1190 (11th Cir. 1982) ("[A] petitioner is entitled to habeas relief only upon showing that the juror was actually biased or incompetent."). *See also United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993) (to exclude a prospective juror for cause, a party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed."). "Actual bias exists if a juror is not 'capable and willing to decide the case solely on the facts before him.'" *Bell*, 351 Fed. App'x at 359 (quoting *Rogers*, 673 F.2d at 1190).

Johnson has not established that Lang was not fair and impartial at trial. Although Lang commented that she might believe law enforcement because of her brother's and friends' law enforcement experience, including what they had told her about people in jail, her subsequent answers reflect her belief that she could put aside her connections to law enforcement, and "really listen[ ]" to "everything" in Johnson's trial, just as she had when she was a juror in another trial. *See United States v. Rhodes*, 177 F.3d 963, 965 (11th Cir. 1999) ("When the juror demonstrates . . . that she can lay aside any opinion she might hold and render a judgment based solely on the evidence presented in court, then dismissal is not required."). Finally, the trial judge instructed the jurors that their verdict should not be influenced by "feelings of prejudice, bias, or sympathy" and must be based on the evidence and on the law contained in the instructions. (Dkt. 8, Ex. 5, p. 1010). Jurors are presumed to follow the court's instructions. *Hallford v. Culver*, 459 F.3d 1193, 1204 (11th Cir. 2006); *United States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005).

Johnson has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim. He is not entitled to relief on Ground One.

Ground Two

Johnson argues that the state court erred in denying his motion to suppress, which sought to exclude a firearm and Johnson's statements on Fourth Amendment grounds. (Dkt. 8, Ex. 2). In this case, police received a description about a car involved in a shooting. Police stopped Johnson's car, which was similar to the involved car, detained Johnson and arrested him after discovering he had no valid driver's license, and found a firearm during a search of the car. After his arrest, Johnson made incriminating statements about the shooting. (Dkt. 8, Exs. 2, 3). In his motion to suppress, Johnson claimed that police had no reasonable suspicion to justify the stop, thereby violating his Fourth Amendment rights. Johnson claimed that the subsequent arrest and search were therefore unlawful, and that because his statements were made "as a result of an illegal arrest," they could not be used against him. (Dkt. 8, Ex. 2, pp. 26-30).

Johnson's Fourth Amendment claim is barred from federal habeas review. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). Accordingly, to obtain federal habeas review of a Fourth Amendment claim, a petitioner must demonstrate that he "was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." *Id*. at 494, n.37. The phrase "'opportunity for full and fair litigation' means just that: an opportunity." *Lawhorn v. Allen*, 519 F.3d 1272, 1287 (11th Cir. 2008) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)). *See also Mincey v. Head*,

206 F.3d 1106, 1126 (11th Cir. 2000) ("[W]here there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." (quoting *Tukes v. Dugger*, 911 F.2d 508, 513-14 (11th Cir. 1990))).

The record demonstrates that Johnson received an opportunity for full and fair litigation of his Fourth Amendment claim before the state trial and appellate courts. The state trial court held an evidentiary hearing on Johnson's suppression motion. (Dkt. 8, Ex. 3). Four witnesses testified and the parties presented legal argument to the court. (*Id.*, pp. 45-123). At the conclusion of the hearing, the trial court denied Johnson's motion. (*Id.*, pp. 123-28). Johnson challenged the trial court's ruling on direct appeal. (Dkt. 8, Ex. 8, pp. 12-20).

For a petitioner to receive an "opportunity for full and fair litigation" necessary to apply the *Stone* bar, the state court must make factual findings when it denies the Fourth Amendment claim. *See Hearn v. Florida*, 326 Fed. App'x 519, 522 (11th Cir. 2009) ("A state does not afford a defendant a full and fair opportunity to litigate the validity of a search under the Fourth Amendment when the state courts fail to make essential findings of fact."). In denying the motion at the conclusion of the suppression hearing, the state court made detailed findings of fact and conclusions of law and stated, "With those findings and that analysis, the Court is going to deny the motion to suppress based upon the challenge to the stop, the detention, the arrest, and the search." (Dkt. 8, Ex. 3, pp. 123-28). Believing that this ruling only concerned the firearm, defense counsel immediately asked the court whether it was also suppressing Johnson's statements:

> [COUNSEL]: [ ] [The prosecutor] and I prefer then that the - - *since the basis for challenging the statement was the - - our claim that the stop was unlawful* that the Court would similarly - - and is the Court similarly denying our motion to suppress his statement on that ground?
>
> THE COURT: On that ground anything from the State?

> [PROSECUTOR]: That was the very basis of the motion so I would ask that to be denied on that basis.
>
> THE COURT: Okay, I just want to give anyone an opportunity to be heard and accordingly, counsel, with those representations and having read your motion and *through this analysis*, we will deny that as well.

(*Id.*, p. 128) (emphasis added).

In his reply, Johnson argues that the *Stone* bar does not apply to the state court's ruling on his Fourth Amendment challenge to the admissibility of his statements because this ruling did not involve any factual findings. However, Johnson challenged his statements' admissibility based on the allegedly unlawful stop and arrest. (Dkt. 8, Ex. 2; Ex. 3, p. 128). And prior to counsel's question, the trial court made factual findings supporting its denial of the suppression motion "based upon the challenge to the stop . . . [and] the arrest." (Dkt. 8, Ex. 3, pp. 123-28). But even if the court only initially ruled on the admissibility of the firearm, the court adopted its detailed analysis–which included explicit factual findings–when it expressly denied the challenge to Johnson's statements. (Dkt. 8, Ex. 3, pp. 123-28). Accordingly, the state court made the requisite factual findings, and applied them to its ruling on Johnson's statements. Therefore, because Johnson had an opportunity for full and fair litigation of his Fourth Amendment claim in the state courts, *Stone* bars federal habeas review of Ground Two.

Accordingly, it is **ORDERED** that:

1. Johnson's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Johnson and to close this case.

3. Johnson is not entitled to a certificate of appealability ("COA"). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id*. "A [COA] may issue ... only if the applicant has made a

substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Johnson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Johnson has not made this showing. Because Johnson is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on December 14, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Leland Johnson
Counsel of Record